IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:18-cv-00290-MR

| | |
|---|---|
| CALDWELL, WRIGHT ENTERPRISES, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) **MEMORANDUM OF**<br>) **DECISION AND ORDER**<br>)<br>) |
| AVADIM HEALTH, INC., | )<br>)<br>) |
| Defendant. | ) |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Partial Summary Judgment [Doc. 35] and the Defendant's Renewed Motion to Compel Arbitration and Stay Proceedings. [Doc. 39].

**I.  BACKGROUND**

Caldwell Wright Enterprises, Inc. (the "Plaintiff") and Avadim Health, Inc. (the "Defendant") entered into a distribution agreement in March 2014. [Doc. 14 at 6]. The distribution agreement gave the Plaintiff the right to market and sell the Defendant's products in a certain market. [Doc. 1 at ¶ 13].

In 2015, the Defendant acquired the Plaintiff's business. [Id. at ¶ 15]. The parties documented the acquisition by signing a written "Agreement of Purchase and Sale" (the "Agreement"). [Id. at ¶ 15]. The Agreement stated that the Defendant would acquire substantially all of the Plaintiff's assets, including the distribution agreement, in exchange for (1) an amount of the Defendant's stock and (2) a percentage of receivables from the sales of some of the Defendant's products. [Id. at 20-21]. The section of the Agreement detailing the products for which the Plaintiff would receive a royalty states that:

> [The Defendant] agrees to pay [the Plaintiff] a portion of payment received by [the Defendant] resulting from sales, licensing, private labeling, and/or distribution of its products *specifically (1) intended for topical use and (2) marketed for use by athletes or in connection with athletics, sports, training, or exercise (the "Innergy Products")* to customers in the U.S.A., its territories and possessions, including the District of Columbia *. . .* however, that products marketed specifically (1) to hunters, campers, and fisherman, or (2) for use in hunting, camping or fishing shall not be deemed to be Innergy Products.

[Id. at 20-21 (emphasis added)].

The Agreement also has a section detailing how the parties are to resolve disputes regarding the royalty payments. [Id. at 21]. According to that section, such a dispute

2

> shall be resolved by an accounting firm mutually agreed upon by [the Plaintiff] and [the Defendant] or, failing such agreement within thirty (30) days following notice of the dispute by [the Plaintiff], then upon the written request of either [the Plaintiff] or [the Defendant], such nationally recognized independent accounting firm selected by the International Institute for Conflict Prevention & Resolution ("CPR") in accordance with the CPR Non-Administered Arbitration Rules (such identified accounting firm, or if applicable, the other firm selected, the "Accountant"). Such Accountant shall be instructed to make a final determination of such payment . . . [and] [s]uch determination shall be final and binding on the Parties.

[Doc. 1 at 21-22].

On October 11, 2018, the Plaintiff filed the present action against the Defendant, asserting claims for breach of contract, indemnification, declaratory judgment, specific performance, accounting, and an award of attorneys' fees. [Id. at ¶¶ 39-62]. The Plaintiff alleges that the Defendant failed to pay the Plaintiff the appropriate royalty for sales of products that were subject to the royalty provision. [See id.].

On November 21, 2018, the Defendant answered the Complaint, claiming that no contract ever existed between the parties because there was "no meeting of the minds" regarding the products to be included within the royalty provision of the Agreement. [Doc. 14 at 1-11]. The Defendant also asserted a counterclaim against the Plaintiff for "rescission of

3

agreement of purchase and sale." [Id. at ¶¶ 1-11]. On December 11, 2018, the Plaintiff answered the Defendant's counterclaim. [Doc. 17].

On December 4, 2018, the Defendant filed a Motion to Compel Arbitration and to Stay Proceedings. [Doc. 15]. On December 18, 2018, the Plaintiff filed a Response to the Motion to Compel Arbitration and Stay Proceedings. [Doc. 18]. The Court held a hearing on the Defendant's motion on May 8, 2019. [Doc. 34]. On May 22, 2019, the Court denied the Defendant's Motion to Compel Arbitration and to Stay Proceedings pending resolution of the Defendant's counterclaim for rescission. [Id. at 3]. Specifically, the Court ruled that it first needed to ascertain whether a valid agreement exists between the parties before determining whether arbitration should be compelled. [Id.]. If there is no agreement, then there is no agreement to arbitrate.

On July 11, 2019, the Plaintiff filed a Motion for Partial Summary Judgment on the Defendant's Counterclaim. [Doc. 35]. On July 11, 2019, the Defendant filed a Motion to Dismiss its Counterclaim without prejudice. [Doc. 38]. The Plaintiff refused to consent to the Defendant's motion unless the Defendant dismissed the counterclaim with prejudice. [Doc. 37 at 3]. On July 24, 2019, the Plaintiff filed a Response to the Defendant's Motion to Dismiss its Counterclaim. [Doc. 42]. On July 24, 2019, the Defendant filed

its Response to the Plaintiff's Motion for Partial Summary Judgment regarding the Defendant's Counterclaim. [Doc. 43]. On July 26, 2019, the Plaintiff filed its Reply Brief in Support of its Motion for Partial Summary Judgment. [Doc. 44].

On July 18, 2019, the Defendant filed a Renewed Motion to Compel Arbitration and to Stay Proceedings. [Doc. 39]. On August 1, 2019, the Plaintiff filed a response [Doc. 45], and on August 7, 2019, the Defendant filed a Reply to the Plaintiff's Response [Doc. 46].

Having been fully briefed, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As the Supreme Court has observed, 'this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)) (emphasis in original).

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), cert. denied, 513 U.S. 814, 115 S. Ct. 68 (1994). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522. If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. Id.

> A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. Furthermore, neither unsupported speculation, nor evidence that is merely colorable or not significantly probative, will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that reasonable minds could differ on a material point, then, regardless of any proof or evidentiary requirements imposed by the substantive law, summary judgment, if appropriate, shall be entered.

Id. (internal citations and quotation marks omitted). Nonetheless, in considering the facts for the purposes of a summary judgment motion, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

## III. DISCUSSION

### A. The Plaintiff's Motion for Partial Summary Judgment on the Defendant's Counterclaim for Rescission of the Contract

This case is before the Court under the Court's diversity jurisdiction, so state law provides the governing substantive law. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938). The parties agree that the relevant law in this case is the law of North Carolina. [Doc. 36 at 4; Doc. 40].

"Rescission is an equitable contract remedy that differs from its legal counterparts. While legal remedies generally compensate the non-breaching party as if there were no breach, rescission treats both parties as if there were no contract." Morris v. Scenera Research, LLC, 368 N.C. 857, 867, 788 S.E.2d 154, 161 (2016) (citing Brannock v. Fletcher, 271 N.C. 65, 73–74, 155 S.E.2d 532, 541 (1967)).

The Defendant argues that rescission of the Agreement is necessary for two reasons. First, the Defendant argues that the Plaintiff's claim for breach of contract construes the royalty provision of the Agreement so as to "define the term 'specifically marked for use by athletes or in connection with athletics, sports, training, or exercise' in a way that is completely disproportionate to the consideration." [Doc. 43 at 4]. Second, the Defendant argues that the Agreement at most represents an agreement to

7

agree on terms later, and therefore there never was an enforceable contract between the parties. [Doc. 43 at 3].

Under North Carolina law, "a contract is an agreement, upon sufficient consideration to do or not to do a particular thing." Arndt v. First Union Nat'l Bank, 170 N.C. App. 518, 522, 613 S.E.2d 274, 278 (2005) (quotation omitted). "A contract results from the concurrence of the minds of two or more persons," and "its legal consequences are not dependent upon the impressions or understandings of one alone of the parties to it." Id. As such, "a contract is what the parties agreed and not what either party thought." Reidsville Grocery Co. v. S. Ry. Co., 215 N.C. 223, 225, 1 S.E.2d 535, 537 (1939).

"[W]here the language used in the contract is clear and unambiguous, the intention of the parties is to be gathered from the face of the contract." Goodyear v. Goodyear, 257 N.C. 374, 380, 126 S.E.2d 113, 118 (1962). "If the meaning of the contract is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein." DeRossett v. Duke Energy Carolinas, LLC, 206 N.C. App. 647, 653, 698 S.E.2d 455, 460 (2010) (citation omitted).

Here, the royalty provision at issue is unambiguous. That provision includes products that are "specifically (1) intended for topical use and (2) marketed for use by athletes or in connection with athletics, sports, training, or exercise . . . ." [Doc. 1 at 20-21]. The provision encompasses a clearly defined set of products and even excludes "products marketed specifically (1) to hunters, campers, and fisherman or (2) for use in hunting, camping, or fishing" from that set of products. [Doc. 1 at 21]. Because the language of the contract is unambiguous, the Court must enforce the royalty provision as written. DeRossett, 206 N.C. App. at 653, 698 S.E.2d at 460.

The Defendant argues that adopting the Plaintiff's reading of the Agreement would render the Agreement "completely disproportionate to the consideration." [Doc. 43 at 4]. The Court's inquiry, however, does not focus on whether a contractual term renders the Agreement disproportionate to the consideration when determining the meaning of a term. Instead, the Court looks at whether the language of the contract provision at issue is unambiguous. When the language is unambiguous, as it is here, the Court must gather the intention of the parties from the face of the written contract. See Goodyear, 257 N.C. at 380, 126 S.E.2d at 118. The face of the contract offers only one interpretation here. As such, there are no grounds for the

Court to order rescission of the Agreement based on the dispute over the scope of the royalty provision.

The Defendant also argues that rescission is warranted because "[a]n agreement to make a contract, where the terms of the contract must be subsequently fixed, does not constitute a binding obligation." [Doc. 43 at 3 (quoting Gregory v. Perdue, Inc., 47 N.C. App. 655, 657, 267 S.E.2d 584, 586 (1980))]. The Defendant alleges that the royalty provision, as construed by the Plaintiff, encompasses so many products that the parties merely agreed to agree in the future on the products that would be subject to the royalty provision. [Id.].

The Agreement, however, does not provide any indication that the parties intended to continue negotiations regarding the royalty provision after they signed the Agreement. Instead, the Agreement specifically includes certain products and excludes other products from the royalty provision. [See Doc. 1 at 21]. Moreover, the Agreement provides a process for resolving disputes stemming from the royalty provision via arbitration, further demonstrating that the parties did not intend to agree on terms in the future. [See id. at 21-22]. The parties currently disagree on the products that fall within the royalty provision, but that dispute does not mean that they left the provision open to future negotiations when they signed the Agreement. As

such, the Court finds that the parties did not merely enter into "an agreement to agree" when they signed the Agreement.

For these reasons, the Court finds that there is no genuine issue of material fact and that the parties entered into a valid, enforceable agreement under North Carolina law. Because there are no grounds for the Court to order the equitable remedy of rescission, the Defendant's counterclaim for rescission is dismissed.

**B.     The Defendant's Motion to Compel Arbitration and Stay Proceedings**

Having determined that there is a valid, enforceable agreement between the parties, the Court now turns to the Defendant's Motion to Compel Arbitration. See Murray v. United Food & Commercial Workers Int'l Union, 289 F.3d 297, 302 (4th Cir. 2002) (When reviewing an arbitration clause governed by the FAA, a Court should "engage in a limited review to ensure that the dispute is arbitrable, i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement.").

The Federal Arbitration Act ("FAA") provides, in pertinent part, as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy

11

> thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  This provision reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract."  AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (internal citations and quotation marks omitted).  The Supreme Court has "interpreted the term 'involving commerce' in the FAA" broadly to cover transactions that are "within the flow of interstate commerce." Citizens Banks v. Alafabco, Inc., 539 U.S. 52, 56 (2003) (citation, internal quotations, and emphasis omitted).

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" Long v. Silver, 248 F.3d 309, 316 (4th Cir. 2001).  North Carolina courts have also recognized a strong public policy favoring arbitration and have held that, where there is any doubt concerning the existence of an agreement to arbitrate, it should be resolved in favor of arbitration.  See, e.g., Martin v. Vance, 133 N.C. App. 116, 120, 514 S.E.2d 306, 309 (1999).

Here, the arbitration provision states that a dispute regarding the monthly payments due under the royalty provision "shall be resolved by an

accounting firm mutually agreed upon by [the Plaintiff] and [the Defendant]." [Doc. 1 at 21-22]. If the parties fail to agree on an accounting firm within thirty days after the Plaintiff provides notice of the dispute, the dispute will be settled by a "nationally recognized independent accounting firm selected by the International Institute for Conflict Prevention & Resolution ("CPR") in accordance with the CPR Non-Administered Arbitration Rules." [Id.]. That firm "shall be instructed to make a final determination of such payment . . . [and] [s]uch determination shall be final and binding on the Parties." [Id.]. In sum, that provision expressly requires the parties to arbitrate disputes regarding the royalty payments.

The Plaintiff claims that the arbitration provision only covers disputes regarding the information contained in the reports that the Defendant delivered to the Plaintiff. [Doc. 45 at 5-7; Doc. 33 at 22:1-28:11]. According to the Plaintiff, the arbitration provision does not include disputes regarding the calculation of the royalty payments. [Id.]. The Agreement, however, contains no such limitation and there is no basis upon which to read such a limitation into it. As the Fourth Circuit instructs, "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Long, 248 F.3d at 316. Likewise, North Carolina's strong public policy in favor of

13

arbitration dictates this interpretation of the agreement. See, e.g., Martin, 133 N.C. App. at 120.

The claims asserted by the Plaintiff in the present civil action fall squarely within the scope of the parties' arbitration provision because the claims involve the calculation of the royalty payments by determining which products are included in the royalty provision. The Agreement requires any disputes regarding those payments to be resolved by arbitration. [See Doc. 1 at 22]. Accordingly, the Defendant's motion to compel arbitration will be granted.[1]

"When parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, [§ 3 of] the FAA requires federal courts to stay judicial proceedings, and compel arbitration in accordance with the agreement's terms." Murray, 289 F.3d at 301 (internal citation omitted); 9 U.S.C. § 3. Accordingly, the Court will stay this matter pending the parties' arbitration in accordance with the terms of the Agreement.

---

[1] Contrary to the Plaintiff's arguments, the claims in this case are all appropriate for resolution through arbitration because they all turn on the same issue and will therefore be resolved through a single determination — what products are included in the royalty payments.

## O R D E R

**IT IS, THEREFORE, ORDERED** the Plaintiff's Motion for Partial Summary Judgment [Doc. 35] is **GRANTED**; the Defendant's Motion to Voluntarily Dismiss its Counterclaim [Doc. 37] is **DENIED**; and the Defendant's Counterclaim is **DISMISSED WITH PREJUDICE**. **IT IS FURTHER ORDERED** that the Defendant's Renewed Motion to Compel Arbitration and to Stay Proceedings [Doc. 39] is **GRANTED**, and the parties are hereby ordered to arbitrate their dispute in accordance with the Agreement signed by the Plaintiff and the Defendant on July 21, 2015. This matter is hereby **STAYED** pending arbitration in accordance with the parties' Agreement.

**IT IS SO ORDERED.**

Signed: August 26, 2019

Martin Reidinger
United States District Judge